**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE**

**CIVIL ACTION NO. 05-148-DLB**

**DANNY BALDRIDGE**                                                                                    **PLAINTIFF**


vs.                              **MEMORANDUM OPINION & ORDER**


**JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                                **DEFENDANT**

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Danny Baldridge filed an application for Disability Insurance Benefits (DIB) on October 29, 2003.  (Tr. 49-51)  Plaintiff alleges he became unable to work on June 4, 2003, due to problems with his knees, back, neck, right shoulder, lungs, and his hearing. (Tr. 56) Plaintiff's claim was denied initially (tr. 32-35) and on reconsideration (tr. 38-40). Plaintiff requested a hearing before an ALJ, which was held on November 29, 2004, in Prestonsburg, Kentucky. (Tr. 323-66)  On January 18, 2005, ALJ Gitlow ruled that Plaintiff was not entitled to disability benefits. (Tr. 12-20)  This decision became the final decision of the Commissioner when the Appeals Council denied review on April 8, 2005. (Tr. 5-7)

On May 11, 2005, Plaintiff filed the instant action.  The matter has culminated in cross motions for summary judgment, which are now ripe for review.

## II.  DISCUSSION

A.   **Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

B.   **The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 13) At Steps 2 and 3, the ALJ found Plaintiff's knee, neck, right shoulder, lung, and hearing problems to be severe, but his back condition to be less than severe under Social Security standards. (Tr. 13-14) Despite these severe impairments, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments severe enough to meet or medically equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4. (Tr. 14)

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light exertional work; that is, lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, although Plaintiff must avoid significant lifting with his right arm and limit his pushing/pulling to these weight limits. The ALJ also found that his standing/walking is limited to a maximum of 2 hours per day, 15 to 30 minutes at a time, and can sit for 6 hours per workday, up to 1 hour at a time. (Tr. 16)  Nonexertionally, Plaintiff can bend only occasionally and should not squat, kneel, crawl or climb.  He is restricted from reaching overhead with his right arm.   Because of his hearing problem, he must avoid loud noise exposure absent hearing protection.  And because of his lung condition, he must avoid excessive dust, fumes or gases.  Finally, despite having a high school education, Plaintiff's reading and math tested at the sixth grade level. (*Id.*)

The ALJ determined that given his RFC, and the heavy semi-skilled and skilled nature of his past relevant work as a coal miner, he could not return to this work. (Tr. 16) This conclusion was supported by the hearing testimony of the vocational expert (VE). (Tr. 356)  The ALJ therefore proceeded to the final step of the sequential evaluation.  At Step 5, the ALJ found there were a significant number of jobs available to Plaintiff in both the

3

national and regional economies despite his limitations. (Tr. 18)  This conclusion resulted from testimony by the VE, in response to a hypothetical question assuming an individual of Plaintiff's age (50 at the time of the hearing and so "closely approaching advanced age," although at the time of application he was 49 and so a "younger person"), education (high school diploma), past relevant work experience (no transferable skills), and RFC. (Tr. 357-59) The VE testified that Plaintiff could obtain employment at the light exertional level as a production inspector or night watchman; and at the sedentary level as a surveillance monitor or small machine tender or machine monitor. (*Id.*)  Since these were positions of significant number in both the regional and national economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act. (Tr. 19)

**C.    Analysis**

Plaintiff submits the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider treating physician opinions or Plaintiff's allegations of disabling pain.  In response, the Commissioner offers that the ALJ's RFC determination is supported by substantial evidence, including the ALJ's consideration of the medical opinion evidence and claimant's credibility in formulating that RFC.

The record in this case contains medical evidence from various treating physicians. Plaintiff's objections are directed specifically to the ALJ's consideration of the opinions from Dr. John Adams, Plaintiff's primary care physician since childhood.  In his decision, the ALJ outlines his interpretation of the physical capacity assessments offered by various medical sources, and indicates that he will follow all of them in formulating Plaintiff's RFC. (Tr. 16) The ALJ's discussion of these assessments warrants further review, for a couple of reasons.

First, in outlining these opinions, the ALJ states that Dr. Adams says Mr. Baldridge "could perform sedentary level exertion" (tr. 16) and refers to exhibit 27F (tr. 202-22). A review of that exhibit, which is the deposition given by Dr. Adams in Plaintiff's Kentucky workers' compensation claim, actually reflects testimony by Dr. Adams that Plaintiff cannot do even sedentary work. (Tr. 211-12)

Second, Dr. Adams offered two other physical capacity assessments – one in January of 2004 (tr. 169-72) and one in November of 2004 (tr. 260-63). The ALJ's decision states that he rejects these treating physician assessments, because "they are not consistent with the functional capacity assessment performed by the claimant in December 2003." (Tr. 16) The functional capacity evaluation (FCE) to which the ALJ refers is one done at Bluegrass Orthopaedics (tr. 270-302) for the benefit of Dr. Balthrop, Plaintiff's treating orthopedic surgeon. That FCE is in fact similar to Dr. Adams' assessments in that both indicate Plaintiff can *occasionally* lift/carry weight, Dr. Adams indicating to a maximum of 20 pounds and the FCE indicating to a maximum of 25-30 pounds. Neither source reflects any weight that can be lifted/carried on a *frequent* basis. (Tr. 169, 261, 272, 283) Dr. Adams' assessments and the Bluegrass FCE do differ in their opinions of Plaintiff's standing/walking and sitting capacities.

An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004) citing 20 C.F.R. § 404.1527(d)(2). If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the

frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion. *Id.* The regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Id.* A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96- 2p, 1996 WL 374188, at *5 (1996).

The ALJ's analysis of Dr. Adams' medical source opinion evidence suffers from many of the same infirmities that mandated reversal in *Wilson*. For example, the ALJ failed to clarify whether Dr. Adams' opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or was "inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(d)(2), and did not explain his application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine how much weight, if any, should be given to Dr. Adams' opinion. *Wilson*, 378 F.3d at 546. For these reasons, remand is required.

In addition, the ALJ indicates that he is following all of the physical capacity assessments provided by medical sources, then with respect to the weight-lifting/carrying functional restriction proceeds to find that "claimant ... [can] lift/carry 20 pounds

6

occasionally and 10 pounds frequently[1] with the avoidance of significant lifting with his right (dominant) arm ..., with pushing/pulling only to those weight limits." (Tr. 16) The extent to which medical source evidence provides for these specific weight capacities is not clear to this Court nor specified by the ALJ.[2] Moreover, these weight limits are significant to a finding that Plaintiff is capable of performing work at the light exertional level.[3] The ALJ's findings reflect this weight limit in the RFC (tr. 18, finding no. 7) and that Plaintiff is capable of performing a significant range of light work (tr. 19, finding no. 12). These findings differ from what was presented to and opined by the VE, a difference that is potentially determinative in this case.

---

[1] These values correspond with the lifting/carrying requirements for light work. *See* 20 C.F.R. § 404.1567(b).

[2] As discussed above, Dr. Adams' opinion does not provide for lifting/carrying of any weight with frequency, nor did the Bluegrass FCE. The FCE limited Plaintiff to sedentary work (tr. 270) and, although stating that based on material handling alone Plaintiff could have qualified for light exertion, the report reflects zero weight lifting/carrying with frequency, as required for light work (tr. 272, 283). Dr. Balthrop opined that he was limited to sedentary work (tr. 142), and Dr. Potter's opinion is silent on weight limits for lifting/carrying with frequency (tr. 164) as is Dr. Koenigsmark's (tr. 188).

[3] The regulations define light work as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

At the time of his application and at the time of the hearing, Plaintiff was an individual straddling the "younger person"[4] and "closely approaching advanced age"[5] categories. He had also worked in the coal mines his adult life, work described by the VE as being at the heavy exertion level, ranging from semiskilled to skilled work that was not transferable. (Tr. 356) The ALJ found he could not return to this past relevant work. (Tr. 19, finding nos. 8, 11) In addition, although Plaintiff has a high school education, the ALJ noted that his reading and math skills were at the sixth grade level. (Tr. 19, finding no. 7) Given Plaintiff's age categories, his educational limitations, and his nontransferable skills, the accuracy of this finding that Plaintiff can perform a significant range of light work becomes crucial, particularly with regard to the Medical-Vocational Guidelines.

The ALJ states that he used Medical-Vocational Rules 202.14 and 202.21 as a framework for decision-making. (Tr. 19, finding no. 13) But those Rules correspond to a high school education, even though the ALJ found Plaintiff to be more restricted educationally/intellectually. *See Skinner v. Sec'y of Health & Human Servs.,* 902 F.2d 447, 450-51 (6th Cir. 1990)(when evaluating a claimant's education as a vocational factor, an ALJ may properly use numeric grade level to determine educational abilities where contradictory evidence does not exist). Those Rules also correspond to the Table for capacity to do "light work." The difficulty here is that while the ALJ's RFC determination for

---

[4]"If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. See Rule 201.17 in appendix 2." 20 C.F.R. § 404.1563(c).

[5]"If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(d).

Plaintiff corresponds to that of light work, this RFC is not what was given to the VE when the ALJ questioned him at the hearing.

> Q. Okay. I'd like you to assume an individual <u>limited to lifting and/or carrying a maximum of 20 pounds occasionally</u>, pushing and/or pulling only to those weight limits. And avoid any significant lifting with the right or dominant arm. This individual is limited to standing and/or walking two hours per day, 15 to 30 minutes at a time. Sitting six hours per day, one hour at a time. Could such an individual perform any of the claimant's past work?
>
> A. No, sir.
>
> Q. Could such an individual perform heavy work?
>
> A. No, sir.
>
> Q. Medium work?
>
> A. No, sir.
>
> Q. Light work?
>
> A. In my opinion, <u>a very severely limited and restricted range of light work</u>, sir.
>
> Q. Sedentary work?
>
> A. And again, significantly limited.
>
> Q. I'd like you to assume an individual the claimant's age, ranging from 49 to 50 years. The claimant's 12th grade education training and work experience. <u>Assume this individual has exertional impairments which limit this individual to a limited range of light work, as set forth by my prior hypotheticals</u>. And assume this individual also has nonexertional limitations. This individual reads at the sixth grade level and performs math at the sixth grade level. This individual is not to squat, kneel, crawl, or climb. May only occasionally bend. This individual is not to reach overhead with the right arm. This individual is to avoid excessive dust, fumes, or gases. This individual is to avoid loud noise, noise exposure without hearing protection. On all of these assumptions in your opinion, are there light and sedentary unskilled job[s] recognized by the Commissioner that such an individual could be expected to be able to perform?
>
> A. There are some.

> Q. Could you identify examples, and the numbers in which they exist nationally and regionally?
>
> A. Yes, sir. In the region to which I'll make reference will be the states of Kentucky, West Virginia, and Ohio combined. At the light level, there's nothing in the hypothetical would preclude work as a production inspector. This is a stationary work setting that requires simple visual inspection in an assembly line. More than 758,000 are reported nationally and with the region of Kentucky, West Virginia and Ohio, the figure is in excess of 80,000. The second example would be that of night watchman. Gate guard. More than 290,000 nationally, more than 16,000 throughout the region. At the sedentary level, there's nothing that would necessarily preclude such an individual from working as a surveillance monitor. Again this is a sedentary security task. More than 167,000 nationally, more than 16,000 throughout the region. A second example would be that of a small machine tender or machine monitor. More than 93,000 throughout the nation, and more than 9,000 regionally.
>
> . . . .
>
> Q. The functional capacity evaluation indicated. And let me read from this. Results indicate that Mr. Baldridge is able to work at the sedentary physical demand level for an eight hour day. His material handling ability qualified him for the light physical demand level. But his inability to stand, walk, longer than the occasional ability necessitates a sedentary physical demand level. Nevertheless, you did provide certain examples at the light level. Could you explain your answer in light of what I just read to you from the FCE?
>
> A. The jobs to which I made reference are jobs that would require only incidental standing and walking. Night watchman for example typically would make occasionally tours through a work site. But [t]he job is primarily performed at a stationary work setting. As would be the production inspector. Both jobs could be performed overwhelmingly from a seated position.

(Tr. 356-59)(emphasis added). Thus, the ALJ was not given a hypothetical that Plaintiff could "lift/carry 20 pounds occasionally and 10 pounds frequently with the avoidance of significant lifting with his right (dominant) arm ... [p]ushing/pulling only to those weight limits." (Tr. 18, finding no. 7) Nor did the VE testify that Plaintiff could perform "a significant range of light work," as was found by the ALJ. (Tr. 19, finding no. 12) Rather, he said the light category of work was "very severely limited." (Tr. 356) This becomes significant for Mr.

10

Baldridge in particular because under the Sedentary Table of the Medical-Vocational Guidelines, an individual of Plaintiff's limited or less education,[6] with nontransferable skills, may be viewed as disabled under Rule 201.09 or viewed as not disabled under Rule 201.19, depending upon the age category.  The ALJ relied upon this testimony of the VE at Step 5, even though it does not coincide with the ALJ's RFC and other findings as set forth in his written decision.  This expert testimony, absent further clarification, therefore cannot serve as substantial evidence in support of the ALJ's decision.[7]

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED,** with this action **REMANDED.**

---

[6]In evaluating a claimant's education as a vocational factor, the regulations provide that "[f]ormal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work.  Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities.  These may be higher or lower.  However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities."  20 C.F.R. § 404.1564(b).  This regulatory subsection goes on to define "limited education" as the "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs" (generally 7th through 11th grade level of formal education), and "marginal education" is defined as "ability in reasoning, artithmetic, and language skills which are needed to do simple, unskilled types of jobs" (generally a 6th grade level or less).

[7]Given the ALJ's processing of the treating physician and VE opinions, consideration of Plaintiff's other point of error – that the ALJ failed to properly account for Plaintiff's complaints of disabling pain – is unnecessary.  However, such credibility determinations are generally viewed as being within the province of the ALJ, *Richardson v. Perales,* 402 U.S. 389, 400 (1971), and his conclusion should not be discarded lightly, *Houston v. Sec'y of Health & Human Servs.,* 736 F.2d 365, 367 (6th Cir. 1984). Here, the ALJ discounted Plaintiff's credibility based upon identified record inconsistencies, including Plaintiff's unwillingness to heed his doctor's advice to lose weight.  See *Walton v. Sec'y of Health & Human Servs.,* 875 F.2d 869, 1989 WL 43915 at *4 n.3 (6th Cir.)(unpublished table disposition)(noting that while a claimant's refusal to lose weight as prescribed does not preclude a disability finding, it can be an indicator to the ALJ that a condition is not a painful as alleged).

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #5) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **GRANTED.**

A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 11th day of September, 2006.



Signed By:
*David L. Bunning*    DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-148-Baldridge.MOO.wpd